**THE LAW OFFICES OF MARK J. FRIEDMAN P.C.**
Counsel to Kailash Gobindram, Defendant
66 Split Rock Road
Syosset, New York 11791
(516) 653-2480
Mark J. Friedman, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

KAILASH GOBINDRAM,

Chapter 7
Case No. 11-75802 (REG)

Debtor.

-----------------------------------------------------------------X
BANK OF INDIA, NEW YORK BRANCH AND
BANK OF BARODA, NEW YORK BRANCH,

Plaintiffs,                                      Adv. Pro. No. 11-09499 (REG)

- against -

KAILASH GOBINDRAM,

Defendant.

-----------------------------------------------------------------X

## DEFENDANT'S POST-TRIAL MEMORANDUM

**TO:    HONORABLE ROBERT E. GROSSMAN
       UNITED STATES BANKRUPTCY JUDGE**

Kailash Gobindram ("Mr. Gobindram"), by and through his counsel The Law Offices Of

Mark J. Friedman P.C. submits his post-trial brief on the issue of whether, from a legal

standpoint, Mr. Gobindram's reliance on counsel served as an acceptable explanation as to why

certain disclosures were not made.

## ARGUMENT

**PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED ON ACCOUNT OF ITS FAILURE TO
ESTABLISH FRAUDULENT INTENT ON BEHALF OF MR. GOBINDRAM**

Bank of India, New York Branch and Bank of Baroda, New York Branch (collectively,

"Plaintiffs") contend that this Court should deny Mr. Gobindram's discharge pursuant to § 727 of

title 11 of the United States Code (the "Bankruptcy Code"), because he made false statements

and omissions pre and post-petition.  However, Plaintiffs' argument must fail.  Mr. Gobindram did

not make misrepresentations to neither Plaintiffs nor its counsel.  Mr. Gobindram disclosed all

necessary information, including the receipt and disbursement of his $117,909.00 state and

federal tax refunds, to his former counsel, Harold Berzow ("Mr. Berzow") and the chapter 7

trustee, Richard Stern, Esq. of his bankruptcy estate (the "Trustee") prior to and during the

Bankruptcy Code § 341 Meeting of Creditors (the "341 Meeting").  Further, Plaintiff's counsel

was present and participated in the 341 Meeting.  Mr. Godindram's disclosures to Mr. Berzow

were for the purpose of disclosing the information during settlement negotiations with Plaintiffs

and in connection with his bankruptcy filings with this Court.  *See* JE–19.  Plaintiffs have failed

to prove any intent to the contrary, and as such, its complaint should be dismissed.

**A.    Mr. Gobindram Reasonably Relied On His Counsel To Disclose All Necessary Information, Thereby Rebutting Any Inference Of Fraud**

Mr. Gobindram testified that he retained Mr. Berzow because of his extensive

bankruptcy experience and impressive office.  Transcript of Record at 36, *Bank of India, New*

*York Branch and Bank of Baroda, New York Branch v. Kailash Gobindram*, Adv. Pro. No. 11-

09499 (12/3/2013).  On June 20, 2011, Mr. Gobindram informed Mr. Berzow that he received

IRS and New York State tax refunds in the sum of $117,909.00 (the "Tax Refunds").  JE–19.

Mr. Berzow and Mr. Gobindram testified at trial that Mr. Berzow was made aware that Mr.

Gobindram had already made $80,000 of disbursements to creditors.  Transcript of Record at

10, 20 *Gobindram*, Adv. Pro. No. 11-09499.  Mr. Gobindram testified that these payments were

made for current and upcoming debts on everyday living expenses such as car and mortgage

payments.  *Id.* at 32.

Further, Mr. Gobindram testified during his pre-trial deposition that he disclosed the

information regarding the Tax Refunds to Mr. Berzow and that it was his intent that the

information be disclosed to the Plaintiffs during the June 27, 2012 settlement meeting (the

"Settlement Meeting").  Transcript of Deposition at 49, *Gobindram*, Adv. Pro. No. 11-09499

(11/29/2012).    Moreover, Mr. Gobindram stated he did not know why Mr. Berzow did not disclose the Tax Refunds, and stated that he did not personally disclose it because "[he] was represented by counsel and…counsel had all [his] financial information prior to the meeting and counsel was basically taking the lead on all financial discussions during the meeting." *Id.* at 48–9.

As the prospect of settlement diminished, Mr. Berzow and his associate prepared Mr. Gobindram's bankruptcy petition and related documents for filing with this Court.  *See* JE–20; Transcript of Record at 12, *Gobindram*, Adv. Pro. No. 11-09499.  On August 15, 2011 (the "Filing Date"), Mr. Gobindram filed for chapter 7 relief under the Bankruptcy Code.  Mr. Gobindram's Statement of Financial Affairs ("SOFA") prepared by Mr. Berzow's office did not disclose, as required, the disbursements to creditors from the Tax Refunds prior to the Filing Date.  JE–11.  When asked if he read the bankruptcy documents before signing, Mr. Gobindram testified "I didn't read the...questions that have nothing entered in them, I just didn't do that."  Mr. Gobindram further testified that "[he] read [questions] one…[and] four" and that he only glossed over questions two and three because he wanted to check the information he submitted for accuracy.  Transcript of Record at 24–5, *Gobindram*, Adv. Pro. No. 11-09499.  Unlike questions one and four, questions two and three of the SOFA have no substantive additions, and are simply checked "None."  JE–11.  At trial, Mr. Berzow testified that the nondisclosure of the Tax Refund in the petition, schedules and SOFA was an "oversight on [his] part" and that there was "no excuse" for the omissions.  *Id.* at 21–2.

Three days after the Filing Date, the Trustee requested a complete accounting of the proceeds of the Tax Refunds.    JE–24.   Mr. Gobindram supplied the Trustee with a full accounting of the disbursement dated September 7, 2011, and testified to his receipt and disbursement of the Tax Refunds at the 341 Meeting.  *See* JE–14; JE–10.  The Trustee did not file any adversary proceeding against Mr. Gobindram and filed his Report of No Distribution on May 22, 2013 [Case No. 11-75802; Docket No. 21].

The element of fraudulent intent is essential to any objection to discharge under Bankruptcy Code § 727(a)(2)(A)[1] and (4)(A).[2]  *In re Kelly*, 35 B.R. 459, 461 (Bankr. S.D.N.Y. 1992).  The plaintiff has the burden of showing actual fraudulent intent, as well as all other elements, by a preponderance of the evidence.  *In re Nazzaro*, No. 10–8500, 2013 WL145627 at *6 (Bankr. E.D.N.Y. Jan. 14, 2013); *In re Bub,* 502 B.R. 345, 355 (Bankr. E.D.N.Y. 2013).  Moreover, it is well established that reliance on counsel, so long as it is reasonable, is a complete defense to a charge of fraud where full and fair disclosure is made.  *In re Colish*, 289 B.R. 523, 542 (Bankr. E.D.N.Y. 2002).  While the debtor is required to provide credible evidence disproving a fraudulent intent in any *prima facie* case, the burden of proving actual intent rests at all times on the objecting party. *Bub*, 502 B.R. at 355–56.

Cases in the Eastern District of New York have held that a debtor's reasonable reliance on counsel can negate or rebut an inference of fraud.  *See Colish*, 289 B.R. at 542; *In re Bub*, 502 B.R. 345, 356–57 (Bankr. E.D.N.Y. 2013); *In re Dubrowsky*, 244 B.R. 560, 573 (E.D.N.Y. 2000).  In *Colish*, where a debtor concealed his remainder interest in a testamentary trust, the court stated that reliance on counsel is a complete defense to a charge of fraud where the debtor makes full and fair disclosures of the facts.  289 B.R. at 542.  Additionally, this Court in *Bub* recognized that reliance on counsel may excuse inaccurate or false oaths.  502 B.R. at 356–57.

Here, Mr. Gobindram's reliance on Mr. Berzow to properly disclose information regarding the Tax Refunds in the Settlement Meeting and bankruptcy filings rebuts and negates any inference of a fraudulent intent.  The record reflects that on June 20, 2011, Mr. Gobindram disclosed to Mr. Berzow the receipt of the Tax Refunds and that $80,000 of which had already been disbursed to creditors for current and upcoming living expenses.  *See* JE–19; Transcript

---

[1] Under Bankruptcy Code § 727(a)(2)(A), a plaintiff must prove by a preponderance of the evidence that: (i) a transfer or concealment of the debtor's property occurred; (ii) the debtor's subjective intent was to hinder, delay, or defraud a creditor; and (iii) that such action and intent occurred within one year prior to the filing date.
[2] Under Bankruptcy Code § 727(a)(4)(A), a plaintiff must prove that: (i) the debtor made a statement under oath; (ii) the statement was false; (iii) the debtor knew the statement was false; (iv) the debtor made the statement with fraudulent intent; and (v) the statement related materially to the bankruptcy case.

of Record at 10, 20 *Gobindram*, Adv. Pro. No. 11-09499.  Seven days later, Mr. Berzow failed to mention or disclose this information at the Settlement Meeting, despite Mr. Gobindram's intentions, and further failed to include this information in Mr. Gobindram's bankruptcy filings. *See* Transcript of Deposition at 48–9, *Gobindram*, Adv. Pro. No. 11-09499; *See also* JE–11.

Despite this, Mr. Gobindram disclosed a full and accurate accounting of the Tax Refunds to the Trustee and testified truthfully at his 341 Meeting regarding both the Tax Refunds and his wife's employment. JE–14; JE–10.

Aside from providing the applicable law for this issue, *Colish* is illustrative here because it provides an example of when a debtor's reliance on counsel was *not* reasonable.  *See* 289 B.R. at 542–43.  In *Colish*, the debtor did not disclose in his bankruptcy petition a remainder interest in a testamentary trust.  *Id.* at 527.  The debtor testified that "he didn't read the particular item[s] concerning future interests" in the petition, but told his bankruptcy counsel about them. *Id.* at 542.  However, the debtor's attorney testified that the debtor never informed him about the trust.  The court revoked the debtor's discharge, noting that had the debtor voluntarily divulged his remainder interest in the trust the court would have been more sympathetic to his pleas of mistake and reliance on counsel.  *Id.* at 542–43.

Conversely, Mr. Gobindram informed Mr. Berzow about the Tax Refunds and its disbursement two months before his Filing Date.  JE–19.  Mr. Gobindram also sent the Trustee a full accounting of the disbursement of the Tax Refunds and testified truthfully regarding the receipt and eventual disbursement of the Tax Refunds at his 341 Meeting, and throughout the entire course of this Adversary Proceeding.  *See* JE–24; JE–14; JE–10.  Furthermore, unlike in *Colish*, Mr. Berzow testified that omitting the information regarding the Tax Refunds from the petition, schedules and SOFA was an "oversight" on his part for which there was "no excuse." Transcript of Record at 21–2 *Gobindram*, Adv. Pro. No. 11-09499.  Therefore, this Court should not hold as the court did in *Colish*, and dismiss Plaintiffs complaint because Mr. Gobindram did

not orchestrate a "scheme" to evade payment of his debts, as the debtor did in *Colish*. 289 B.R. at 536.

Therefore, Mr. Gobindram's reliance on counsel negates the inference of necessary fraudulent intent that would warrant a denial of discharge.

**B.    Mr. Gobindram's Pre-Petition Payments To Creditors For Everyday Living Expenses Were Not Made With Fraudulent Intent**

The subject of any inquiry under Bankruptcy Code § 727 is intent. *Kelly*, 35 B.R. at 461. The objecting party must show that any omission, transfer or false statement was made for the specific purpose of perpetuating a fraud. *Id.* And while amendments and further disclosures do not automatically expunge any false oath or omission, it is indicative of innocent intent. *Id.*

Here, along with his good faith reliance on counsel, Mr. Gobindram's transfers of the Tax Refunds were done without a subjective fraudulent intent.  As indicated in Joint Exhibit 10, with the proceeds of the Tax Refunds Mr. Gobindram made pre-payments on: (i) his mortgage in the amount of $11,548.28; (ii) his electric bill in the amount of $1,545; and (iii) his gas bill in the amount of $740.00.  Mr. Gobindram stated that this was done in the wake of losing his job and was for the purpose providing his family with some breathing room while he tried to secure other employment.  *See* Transcript of Record at 32, *Gobindram*, Adv. Pro. No. 11-09499.  Moreover, when asked by the Court "So these payments were done because of your wife's insecurities?", Mr. Gobindram replied "That is correct."  *Id.*  Indicating that his intent was not to defraud Plaintiffs or any other creditors, but rather to provide some security to his family during a trying time.

Further indicative of his intent, Mr. Gobindram testified that, as he understood it, payments on the mortgage were made "for the benefit of the [Plaintiffs]," because the Plaintiffs had a perfected lien on his residence and by decreasing the debt on the property it would provide a benefit to the Plaintiffs.  Thereby showing that the transfer of funds from the Tax

Refunds were not intended to hinder or defraud the Plaintiffs, but rather were intended to benefit the Plaintiffs.

Also, Mr. Gobindram made full, accurate and truthful disclosures regarding the Tax Refunds and his wife's employment to the Trustee both before and during his 341 Meeting. *See* JE–24; JE–14; JE–10. The Trustee did not commence an adversary proceeding against the Debtor and filed his Report of No Distribution on May 22, 2013 [Case No. 11-75802; Docket No. 21]. Unfortunately, Mr. Berzow failed to amend Mr. Gobindram's petition, schedules and SOFA, and by the time he retained new counsel this Adversary Proceeding had already been commenced. [Case No. 11-09499; Docket No. 7].

*Nazzaro* is instructive for this inquiry, where this Court denied the debtor's discharge under Bankruptcy Code § 727(a)(2)(A). There, the debtor transferred his 7.5% interest in a mortgage banking and brokerage firm to another equity member for zero consideration. *Nazzaro*, at *4–5. After the transfer, the debtor remained as the Chief Operating Officer and continued to receive compensation under the limited liability operating agreement of the firm. *Id*. at *5. Additionally, the Court noted that the debtor intentionally started a new mortgage firm, rather than re-capitalize his old mortgage firm which was already indebted to the plaintiff in the adversary proceeding. Thus evidencing a scheme intended to insulate the debtor from liability to the creditor. *Id*. at *10.

Here, however, Mr. Gobindram did not exhibit the "badges of fraud" present in *Nazzaro*. Rather, Mr. Gobindram received $117,909.00 in tax refund dollars and made payments to third party creditors, such as his mortgage servicer. As indicated in Joint Exhibits 7 and 10, Mr. Gobindram transferred only $27,000 of this amount to his wife, Jacqueline Melson, for the purpose of repaying monies he borrowed on her credit cards. Jacqueline Melson is not a joint debtor in the main bankruptcy case and as such, her debts on these credit cards would not be eligible for discharge. Thus, Mr. Gobindram should receive a discharge, unlike the debtor in *Nazzaro*, as his transfer of funds were to creditors for the purpose of paying down or

7

minimalizing his current and upcoming debt, not to orchestrate a scheme that operates to insulate him from liability to the Plaintiffs and other creditors. *Nazzaro*, at *11

**C.    Mr. Gobindram's Failure To Read The Statement Of Financial Affairs In Its Entirety Does Not Amount To A Reckless Indifference To The Truth**

An objecting party must prove by a preponderance of the evidence that the debtor acted with fraudulent intent.   *Dubrowsky*, 244 B.R. at 572.   In certain circumstances, a reckless indifference to the truth may suffice to sustain an action for fraud. *Id.*

In considering whether a debtor's conduct amounted to a "reckless indifference to the truth," a court may consider: (i) the nature of the information sought and the attention to detail; (ii) the debtor's financial sophistication; and (iii) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies.  *In re Adler*, 494 B.R. 43, 77 (Bankr. E.D.N.Y. 2013).

Here, Mr. Gobindram's failure to fully review portions of his bankruptcy filings were not the result of a "reckless indifference to the truth" but rather were the result of an isolated oversight, which does not serve as the functional equivalent of fraudulent intent.  Mr. Gobindram testified that he reviewed, in detail, questions one and four of the SOFA, because he wanted to make sure the substantive additions to those sections were accurate.  Transcript of Record at 24, 25, *Gobindram*, Adv. Pro. No. 11–09499.  However, Mr. Gobindram glossed over questions two and three because they were boilerplate text without any added information. *Id.*  Thus, Mr. Gobindram made a good faith effort to review his filings for accuracy, but made an understandable mistake of thinking an unaltered section was not applicable to his bankruptcy filing.

Moreover, Mr. Gobindram's petition, schedules, and SOFA are not riddled with numerous errors that he chalks up to "carelessness," but rather the omission of the Tax Refunds from the filings was an isolated mistake, and Mr. Gobindram immediately clarified the mistake through his disclosures to the Trustee and his testimony at the 341 Meeting. *See* JE–14; JE–

10.  Further, at no time during Mr. Berzow's representation of Mr. Gobindram did he advise Mr. Gobindram that he should file amended schedules and an amended SOFA disclosing the Tax Refunds and the transfers therefrom.

*Dranichak* provides a factually similar case to the one at bar.  There, the debtor allegedly provided omissions and misstatements, including, but not limited to: (i) failure to disclose licensure as real estate agent; (ii) understatement of income for years 2008, 2009, and 2010; and (iii) failure to disclose status as officer and general manager of fitness center.  493 B.R. at 376.  The debtor testified that prior to signing, he simply "glanced" through and "scanned" his petition.  *Id.* at 383.  The district court affirmed the bankruptcy courts finding that a materially false statement existed, but also affirmed in holding that the debtor did not act with a "reckless disregard for the truth" that can amount to a fraudulent intent and relied, in part, on the work of his hired professionals.  *Id.* at 384.  The court reasoned that no evidence existed to prove that the debtor failed to read the petition altogether.  *Id.*  Further, the court noted that failure to comprehensively review a bankruptcy petition does not require a denial of discharge.  *Id.* at 383.

Similarly, here, Mr. Gobindram testified that he reviewed the substantive additions to the SOFA prior to signing, but did not review for accuracy the boilerplate language contained in questions 3(A), 3(B) and 3(C) on the SOFA, and further relied on Mr. Berzow to accurately include all of the information disclosed to him.  *See* Transcript of Record at 24–5, *Gobindram*, Adv. Pro. No. 11-09499.  Therefore, this Court should hold as the court in *Dranichak*, and dismiss the Plaintiffs complaint.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs complaint because it failed to prove Mr. Gobindram acted with fraudulent intent, and any inference of fraud is negated by Mr. Gobindram's good faith and reasonable reliance on counsel, his subsequent full and truthful disclosures, and subjective innocent intent throughout the time periods at issue.

Dated: Syosset, New York
     February 6, 2014

                    **THE LAW OFFICES OF MARK J. FRIEDMAN P.C.**
                    Counsel to Kailash Gobindram, Defendant

        By:   *s/Mark J. Friedman*
               Mark J. Friedman, Esq.
               66 Split Rock Road
               Syosset, New York 11791
               (516) 653-2480