```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
        In re:                                                      Chapter 7
                                                                    Case No. 11-75802-reg
        KAILASH GOBINDRAM,

                        Debtor.
----------------------------------------------------------------x
        BANK OF INDIA, NEW YORK BRANCH and
        BANK OF BARODA, NEW YORK BRANCH,

                        Plaintiffs,                                 Adv. Proc. No. 11-9499-reg

        against

        KAILASH GOBINDRAM,

                        Defendant.
----------------------------------------------------------------x
```

## DECISION AFTER TRIAL

This matter is before the Court pursuant to an adversary proceeding commenced by Bank of India, New York Branch ("BOI") and Bank of Baroda, New York Branch ("BOB") (collectively, "Plaintiffs") against Kailash Gobindram ("Debtor"), asking the Court to deny the Debtor's discharge due to knowing and fraudulent misrepresentations in his bankruptcy schedules, as well as his transfer of funds with intent to hinder, delay, or defraud creditors. *See* 11 U.S.C. § 727(a)(4)(A) and (a)(2)(A). The Debtor admits that there were errors in his bankruptcy petition and schedules, but argues that he relied on the advice of his legal counsel, Harold S. Berzow, Esq. ("Mr. Berzow") and the law firm of Ruskin Moscou Faltischek, P.C. ("RMF"). The Debtor asserts that because his attorney completed his bankruptcy petition and schedules, any errors made in those documents could not have been made with fraudulent intent by the Debtor. Rather, the Debtor argues that those misstatements were made solely by his

1

attorney and because he relied on his attorney to properly fill out his petition, he cannot be found to have the requisite fraudulent intent needed for a denial of his discharge.

The Court finds that the Plaintiffs have established all elements required to deny the discharge pursuant to § 727(a)(4)(A). The Plaintiffs have proven, by a preponderance of the evidence, that the Debtor knowingly and fraudulently submitted a false oath or account to the Court regarding pre-petition transfers made to creditors and insiders. The Debtor stated in his bankruptcy petition that he had not made any payments to creditors or insiders within ninety days or one year prior to the Petition Date, respectively, when in fact, he had.

The Debtor asserts that these misstatements were the fault of his counsel, RMF, as he relied on counsel to accurately complete and file his bankruptcy schedules. However, this defense does not negate the Debtor's reckless disregard for the truth. The Debtor did not read his bankruptcy petition and schedules before authorizing counsel to file them on his behalf, despite the fact that the Debtor signed the document stating he had read the petition and schedules and all answers given were accurate and complete. The Debtor had ample time to review and correct his mistakes, and he told RMF that he had read the petition and it looked "fine." Whatever counsel's error may have been, it does not insulate the Debtor or relieve the Debtor of his responsibility to make certain that the statements he made under oath were accurate and truthful. The record in this matter makes clear that this Debtor did not meet this standard. Therefore, the Debtor's discharge will be denied pursuant to § 727(a)(4)(A).

The Plaintiffs also seek entry of an order denying the Debtor's discharge pursuant to § 727(a)(2)(A). Since the Court has already granted the denial of discharge, it declines to rule on this claim. Finally, the Court denies the Plaintiffs' request for attorneys' fees.

## PROCEDURAL HISTORY

On August 15, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On November 21, 2011, the Plaintiffs commenced this adversary proceeding, objecting to the Debtor's discharge. The Plaintiffs allege three causes of action: (1) denial of the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A), (2) denial of the Debtor's discharge under 11 U.S.C. § 727(a)(4)(A), and (3) a claim for attorneys' fees. On January 30, 2012, the Court so-ordered a stipulation substituting Mark J. Friedman as counsel for the Debtor in the adversary proceeding.[1] The Debtor filed his answer on February 7, 2012, arguing that he acted in good faith and in reliance on the advice of his former bankruptcy counsel, Mr. Berzow and RMF.

On July 9, 2013, the Plaintiffs and the Debtor filed a Joint Pretrial Memorandum ("JPM"). Pursuant to the JPM, Joint Exhibits 1-16 were admitted into evidence. However, the Plaintiffs objected to the Debtor's exhibits 1-6 on the basis of relevance, hearsay, foundation, and a selective waiver of attorney-client privilege between RMF and the Debtor. The Plaintiffs argued these documents, which included e-mails between the Debtor and RMF, were covered by the privilege, and the Debtor would have to waive the privilege in order to introduce them into evidence. The Plaintiffs also asserted an objection based on subject matter waiver of the privilege, arguing that they were unable to see the full context of the documents, and that if some privileged documents were to come into evidence, they would need to see all other privileged documents.

The Court conducted a two-day trial, on July 16, 2013 and December 3, 2013. The Court initially ruled that all the exhibits would come into evidence except Debtor's Exhibit 4, which

---

[1] RMF made a motion to withdraw as counsel in the main case on June 1, 2012, which was granted by this Court on July 2, 2012.

would be admitted only in part.[2] Trial Transcript, Day 1 ("Trial Tr. 1"), p. 20. However, the Debtor completely waived his attorney-client privilege later during trial, allowing all initial exhibits to be admitted into evidence. Trial Tr. 1, p. 80, 87. During trial, Ramakrishnan Ramaswamy, Assistant General Manager of BOB, the Debtor, and Mr. Berzow testified. Joint Exhibits 17-25 were also admitted into evidence during the trial. Trial Transcript, Day 2 ("Trial Tr. 2"), p. 16, 41. The Plaintiffs and the Debtor both filed post-trial briefs on February 6, 2014. Thereafter, the adversary proceeding was marked submitted.

## FACTS

Prior to the bankruptcy filing, the Debtor owned and operated two electronics companies, Kash 'N' Gold Ltd. and Power Brand. Trial Tr. 1, p. 20. At one point in time, these companies generated $48 million in sales. Trial Tr. 1, p. 23. Beginning in 1984, these companies began receiving loans and other credit facilities from Plaintiff BOI and, starting in 2000, from Plaintiff BOB. Trial Tr. 1, p. 24, 25. On March 17, 2009, Kash 'N' Gold entered into an amended credit agreement with both banks to help improve the company's financial position. Trial Tr. 1, p. 25; Joint Exhibit ("JE") 15. BOB entered into a credit agreement with Kash 'N' Gold, which was personally guaranteed by the Debtor.[3] Trial Tr. 1, p. 6, 25; JE 3,4. The company and the Debtor defaulted in repayment on the debt and the Plaintiffs sued both Kash 'N' Gold and the Debtor in New York state court on April 22, 2011 for non-payment. Trial Tr. 1, p. 7, 27; JE 5.

On May 27, 2011, the Debtor received a New York State income tax refund of $16,129 and on June 16, 2011, he received a federal tax refund of $101,780. Trial Tr. 1, p. 28. The

---

[2] The Debtor's Exhibit 4 consists of an attachment-a letter sent by the Chapter 7 Trustee to Mr. Berzow concerning additional information required from the Debtor- as well as a cover letter e-mail between RMF and the Debtor discussing the Trustee's letter. Only the attachment, and not the cover email, was admitted in order to protect the privilege.
[3] The Debtor's wife was also a guarantor on the loan, but she was a limited guarantor. Trial Tr. 1, p. 36.

4

Debtor deposited both refunds into his Citibank account and began writing a series of checks from this account to creditors other than the Plaintiffs. Trial Tr. 1, p. 28- 29; JE 7. Two of these checks, one for $20,000 and one for $7,000, were written to an entity called One Armed Bandit LLC, which lists the Debtor's wife as the operating manager. Trial Tr. 1, p. 29-30; JE 7. When questioned about these transfers during trial, the Debtor stated that she was the president in name for his sons, and that his wife did not work at the time of the transfers. Trial Tr. 1, p. 30-33.

The Debtor engaged RMF as his bankruptcy counsel around March 2011. Trial Transcript, Day 2 ("Trial Tr. 2"), p. 5. The Debtor told Mr. Berzow on June 20, 2011 that he received the tax refunds and Mr. Berzow knew at that time that he had disbursed about $80,000 of the proceeds. Trial Tr. 2, p. 7, 10, 20; JE 19. However, Mr. Berzow testified during trial that he did not have the details of the dispositions until September 7, 2011, after the Petition Date. Trial Tr. 2, p. 10, 13, 15; JE 22. Prior to filing the petition, Mr. Berzow spoke with the Debtor about ramifications if he transferred his tax refund to creditors, telling him there was a potential those payments could be recovered as preferences during bankruptcy. Trial Tr. 2, p. 6. On June 15, 2011, Mr. Berzow sent the Debtor an email stating that "if [he] file[d] bankruptcy now [he] will lose all rights to the tax refund." Trial Tr. 2, p. 15; JE 25. Mr. Berzow further advised him that if he filed, the refunds would be turned over to a trustee. Trial Tr. 2, p. 16.

Mr. Berzow accompanied the Debtor to a meeting of the Plaintiffs' representatives on June 27, 2011 to attempt to resolve the state court lawsuit. Trial Tr. 2, p. 7. Shortly before this meeting, the Debtor asked Mr. Berzow not to disclose that he had received the tax refunds. Trial Tr. 2, p. 7-8. At the meeting, the Debtor told the Plaintiffs that he had no assets. Trial Tr. 1, p. 8. After the meeting, on June 30, 2011, the Debtor sent the Plaintiffs a financial statement on June 30, 2011, which did not disclose that the Debtor received approximately $120,000 in tax

refunds shortly before the meeting. Trial Tr. 1, p. 10; JE 6. The financial statement stated that there was only $2,800 in the Debtor's Citibank account, which was a joint account with his wife. Trial Tr. 1, p. 39; JE 6. In reality, as of June 26, 2011, the Debtor had $22,000 in this account. Trial Tr. 1, p. 35; JE 7.

When the Debtor filed bankruptcy on the Petition Date, he included a Statement of Financial Affairs ("SOFA"), which he signed under penalty of perjury. Trial Tr. 1, p. 41; JE 11. In Section 3 of the SOFA, when asked to identify all payments for any consumer goods or debts to creditors made within ninety days prior to the Petition Date, the Debtor checked the box stating "none." Trial Tr. 1, p. 42; JE 11. However, the Debtor did make payments to creditors with portions of the $120,000 in tax refunds and those payments were all made within ninety days of the Petition Date. Trial Tr. 1, p. 43-44. The Chapter 7 Trustee requested that the Debtor prepare an accounting of the transfers from the Citibank account made with the tax refund proceeds. Trial Tr. 1, p. 46; JE 9, 10. The accounting, signed September 7, 2011, shows that the Debtor made various transfers to pay off his wife's credit card, as well as to pre-pay various creditors, such as advanced car and mortgage payments. Trial Tr. 1, p. 48, 49; JE 10. The Debtor did not disclose in the accounting that he received the State tax refund of $16,000. Trial Tr. 2, p. 34. The Debtor also checked the box in Section 3 of the SOFA stating that he did not make any payments to insiders within one year of the Petition Date. Trial Tr. 1, p. 44-45; JE 11. However, the Debtor testified at trial that he paid $27,000 to his wife through checks made out to One Armed Bandit LLC, as well as paying off some of her credit card bills. Trial Tr. 1, p. 44. The Debtor did not use any of the refund money to pay the Plaintiffs. Trial Tr. 1, p. 53.

The Debtor testified at trial that he intended to use a portion of the refund to repay the Plaintiffs. Trial Tr. 1, p. 78. He further explained that he did not intend to defraud, hinder, or

delay the Plaintiffs from collecting their debt. Trial Tr. 1, p. 84-85. Rather, his intent was to make sure his house did not enter foreclosure. Trial Tr. 1, p. 85. Also, because the Plaintiffs had a perfected senior lien on his house, he understood that by decreasing the mortgage, the Plaintiffs would receive some benefit. Trial Tr. 1, p. 85.

As for the misstatements in his SOFA, the Debtor asserts an advice of counsel defense, stating that he relied on RMF to accurately prepare the documents presented for his signature. Trial Tr. 2, p. 36. RMF prepared the SOFA, as well as the rest of the petition, and at a meeting with Mr. Berzow on August 11, 2011, the Debtor requested to take the petition home for review. Trial Tr. 2, p. 13. RMF also e-mailed the Debtor a draft bankruptcy petition on August 12, 2011. Trial Tr. 2, p. 11; JE 20. On August 14, 2011, the Debtor replied, via e-mail, that he "read everything" and "it looks fine." Trial Tr. 2, p. 12; JE 21. The Debtor signed the bottom of the SOFA, below the words "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." Trial Tr. 1, p. 41; JE 11. After this, Mr. Berzow did not believe there was any reason to change or revise the petition. Trial Tr. 2, p. 12. Mr. Berzow admitted at trial that he reviewed the bankruptcy petition after it was prepared and it was oversight and error on his part not to fix the answers in Section 3 of the SOFA before submitting it to the Court. Trial Tr. 2, p. 21.

According to the Debtor, he did not realize that the SOFA contained misinformation until the Plaintiffs filed this adversary proceeding. Trial Tr. 1, p. 54. The Debtor admitted during trial that he did not actually read the entire SOFA, but rather relied on his attorney for the accuracy of the answers. Trial Tr. 1, p. 42-43. Specifically, the Debtor did not read Section 3 of the SOFA, as the box was merely checked with no additional information given. Trial Tr. 2, p. 24-25. The

Debtor testified that despite sending RMF an e-mail stating that he had read the documents, he only read the specific sections of the SOFA where he provided information other than "none." He did not read the sections where there were "no answers." Trial Tr. 2, p. 26-27. When asked during trial if he understood the questions contained in this section, the Debtor stated that if he had read Section 3, he would have known his answer was incorrect. Trial Tr. 2, p. 25-26, 28.

## DISCUSSION

**1.**     *2nd Cause of Action – Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A)*

The Plaintiffs ask the Court to deny the Debtor's bankruptcy discharge due to knowing and fraudulent misstatements made in the SOFA. It is well-settled law that the denial of a debtor's discharge is a drastic remedy that must be construed strictly in favor of the debtor. *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996). However, a discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor. *Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994).

Section 727(a)(4)(A) provides:

> (a) The court shall grant the debtor a discharge, unless-
>   (4) the debtor knowingly and fraudulent, in or in connection with the case-
>     (A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A).

Under this section, the Plaintiffs must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the

statement related materially to the bankruptcy case. *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000). The plaintiff bears the burden of establishing each of the elements of § 727 by a preponderance of the evidence. *See Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993); *see also* Fed. R. Bankr. P. 4005. "Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden shifts to the debtor to provide evidence to rebut the plaintiff's *prima facie* case." *Dubrowsky v. Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000) (citing *In re Gollomp*, 198 B.R. 433, 440 (S.D.N.Y. 1996)).

    **a.**    *Elements 1, 2 and 3- The Debtor Made a Knowingly False Statement Under Oath*

A false statement made or omitted as part of the bankruptcy petition, schedules, at an examination, or during the proceeding itself may constitute a false statement under oath for purposes of § 727(a)(4)(A). *New World Rest. Grp., Inc. v. Abramov (In re Abramov)*, 329 B.R. 125, 132 (Bankr. E.D.N.Y. 2005). The plain language of this statute provides that one single false oath or account is sufficient to deny a debtor's discharge. *TD Bank, N.A. v. Nazzaro (In re Nazzaro)*, No. 810-74869-reg, 2013 WL 145627, at *7 (Bankr. E.D.N.Y., Jan. 14, 2013); *Olympic Coast Inv., Inc. v. Wright (In re Wright)*, 364 B.R. 51, 73 (Bankr. D. Mont. 2007) (citing *Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (1st Cir. BAP 1999), *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (9th Cir. BAP 1999), and *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)). It is crucial for the successful administration of the estate that the debtor provide truthful information in connection with the bankruptcy case. *Dubrowsky*, 244 B.R. at 572. "[T]he very purpose of…§ 727(a)(4)(A), is to make certain that those who seek the

shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction…." *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).

Here, the Debtor omitted the fact that he made transfers to creditors within ninety days of the Petition Date, and the fact that he made transfers to his wife, an insider, within one year of the Petition Date. By checking the "None" box for these questions in the SOFA, the Debtor made a misstatement in his petition, and therefore made a false statement under oath. The Debtor knew that these statements were false, as he admitted during trial that had he read these questions, he would have known that the answers given were incorrect and would have brought this to the attention of his attorney. Trial Tr. 2, p. 28, 37.

Therefore, the Debtor admittedly made knowingly false oaths in the documents he submitted to the Court. The Plaintiffs have therefore proven the first three elements of their § 727(a)(4)(A) claim by a preponderance of the evidence.

### c. *Element 4- The Debtor Made the Statement with Fraudulent Intent*

The burden of showing the misstatement or omission was made with actual fraudulent intent lies with the party objecting to the debtor's discharge. *Pergament v. Smorto (In re Smorto)*, N. 07-CV-2727 *JFB), 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008). "Once the [plaintiff] has produced persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanation." *Periera v. Gardner (In re Gardner)*, 384 B.R. 654,

662-62 (Bankr. S.D.N.Y. 2008) (citations omitted). Fraudulent intent may be inferred from the circumstances of the case. *Sperling v. Hoflund (In re Hoflund)*, 163 B.R. 879, 882-83 (Bankr. N.D. Fla. 1993). Such circumstances may include "inferences from the debtor's conduct, all surrounding circumstances, and the apparent course of conduct." *Palmer v. Downey (In re Downey)*, 242 B.R. 5, 13 (Bankr. D. Idaho 1999) (citations omitted). If a debtor is found to have exhibited a "reckless indifference to the truth," that is sufficient to establish fraudulent intent sufficient to deny the discharge. *See Diorio v. Kreisler-Borg Constr. Co. (In re Diorio)*, 407 F.2d 1330, 1331 (2d Cir. 1969) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt….Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth…is the equivalent of fraud.") (citations omitted); *see also Ross v. Wolpe (In re Wolpe)*, No. 09-13469, 2013 WL 1700930, at *6 (Bankr. N.D.N.Y. 2013) (fraudulent intent may be shown through a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering").

Reckless indifference to the truth is unique to § 727(a)(4)(A). *Lisa Ng & Charming Trading Co. v. Adler (In re Adler)*, 494 B.R. 43, 77 (Bankr. E.D.N.Y. 2013). To prove intent under this standard, courts consider three non-exclusive factors: (1) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (2) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (3) whether a debtor repeatedly blamed recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies. *Id.*; *see also Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 313 (Bankr E.D. Pa. 2006) (quoting *In re Maletta*, 159 B.R.

108, 112 (Bankr. D. Conn. 1993)) ("Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement…"). If a plaintiff has met the burden of producing persuasive evidence of a false statement, a debtor's explanation must disprove his reckless indifference in order to disprove plaintiff's *prima facie* case. *See Adler*, 494 B.R. at 77-78.

The Plaintiffs made a *prima facie* case that the Debtor did, in fact, submit false answers to the Court in his SOFA. In fact, the Debtor admitted that his answers were incorrect. The Debtor testified, however, that he did not intend to submit false information to the Court, but merely failed to read his answers. This explanation rings hollow. The Debtor had the opportunity to review and correct whatever mistakes the aforementioned documents contained. RMF forwarded the Debtor a copy of the SOFA, and the Debtor responded, stating that he had read over the documents and they "look[ed] fine." Trial Tr. 2, p. 12; JE 21. The Debtor also signed the bottom of the SOFA, stating under penalty of perjury that he read the document, when this was in fact false. *See Bohm v. Dolata (In re Dolata)*, 306 B.R. 97, 149-50 (Bankr. W.D. Pa. 2004) (citation omitted) ("[I]f a debtor fails to read his or her bankruptcy schedules or Statement of Financial Affairs but nevertheless signs the declaration that is included at the end of such documents to the effect that he or she has read such document, then such debtor has, at a minimum, fraudulently uttered a false oath for purposes of § 727(a)(4)(A) in the form of such declaration…by not so reading, the debtor exhibits a reckless indifference to the truth, which recklessness…is the equivalent of fraud").

Based on these circumstances, the Court finds that the Debtor displayed a reckless disregard for the truth when he signed his bankruptcy petition and schedules. While not contesting that the documents contained false statements and admitting he had the opportunity to

review the documents and that he informed counsel that the documents were "fine," the Debtor nevertheless argues that he should not be held accountable for his actions. Rather, he argues it is the fault of his prior counsel and asserts and advice of counsel defense.

### i. *Advice of Counsel Defense*

An explanation by a debtor that he acted on advice of counsel, who in turn was fully aware of all the relevant facts, generally rebuts an inference of fraud. *Dubrowsky*, 244 B.R. at 573. However, the advice of counsel defense is "not an impenetrable shield behind which [a debtor] may continually hide." *Id.* at 575. The advice of counsel defense will not save a debtor who has failed to produce the information sought and to show "the attention to detail and accuracy in answering" expected of a similarly situated person. *Adler*, 494 B.R. at 78 (citation omitted). A "well-educated, long experienced and sophisticated businessman is expected to answer with more care and accuracy than a financially unsophisticated one." *Id.* (quoting *Maring v. PG Alska Crab Inv. Co.*, 338 Fed.Appx. 655, 658 (9th Cir. 2008)). If a person similar to the Debtor would regard the omitted information as "plain, palpable and transparent fact[s]," the inference of fraudulent intent raised by a debtor's false papers will not be rebutted by an advice of counsel defense. *Id.* (quoting *Barnett Bank of Tampa, N.A. v. Muscatell (In re Muscatell)*, 113 B.R. 72, 75 (Bankr. M.D. Fla. 1990)); *see also Dolata,* 306 B.R. at 150 (stating that the advice of counsel defense is only available to debtors if the advice of counsel was needed by such debtors in order for them to be able to ascertain whether they needed to disclose. If such advice was unnecessary, then a knowingly false disclosure or omission constitutes a false, as well as fraudulent, oath).

The Debtor, an owner and operator of two multi-million dollar businesses, is a sophisticated businessman who has experience in handling and signing important documents. He should have known to carefully read over all questions before signing the SOFA, and not just the questions for which he provided answers other than "none." The questions themselves were not complex business questions, but rather plain facts that could have easily been answered by the Debtor without the help of his counsel. The questions asked whether the Debtor had made transfers of his money to creditors or insiders. These questions do not require legal advice. Rather, these are fact-based questions which any debtor would be expected to understand and answer accurately, let alone a sophisticated businessman. The Debtor even admitted on the stand that had he read the questions, he would have known that the answers were incorrect, showing that he did not need the advice of his counsel in order to answer correctly. Trial Tr. 2, p. 28, 37. In his post-trial brief, the Debtor admits that a reliance on counsel defense is only a defense where the reliance is reasonable. *See* Debtor's Post-Trial Brief, p. 4 (*citing Colish v. U.S. Dep't Treas. I.R.S. (In re Colish)*, 289 B.R. 523, 542 (Bankr. E.D.N.Y. 2002)). The Court finds that under these circumstances, the Debtor's complete reliance on Mr. Berzow and RMF to complete his petition and schedules was not reasonable.

Even when an attorney admits that he or she made a mistake in a debtor's petition, it is not enough to absolve a debtor of the responsibility to carefully review their documents. For example, in *In re Tully*, the debtor's attorney admitted that he failed to properly complete the debtor's schedules because he filled out the paperwork in a rush and the mistake was merely an oversight on his part. *Tully,* 818 F.2d at 111. However, the court stated that "an attorney's willingness to bear the burden of reproach [cannot] provide blanket immunity to a debtor; it is well settled that reliance upon advice of counsel is…no defense where it should have been

14

evident to the debtor that the [information was incorrect]." *Id; see also In re Mascolo*, 505 F.2d 274, 276-77 (1st Cir. 1974) (Where a debtor prepared the various schedules with his attorney and the attorney inadvertently omitted the debtor's ownership of two bank accounts, the court found that the debtor could not use the advice of counsel defense); *see also Bieniek*, 417 B.R. at 139 (stating that even if bankruptcy counsel erroneously omits items from the petition, such omissions are not acceptable where the debtor had time to review and remedy the mistake).

Mr. Berzow admitted at trial that the omission of the transfers from the SOFA was a mistake and oversight on his part. Trial Tr. 2, p. 21. However, this does not absolve the Debtor of his obligation to read and understand the documents he signed. The Debtor was given time to take these documents home and review them before submitting them to the Court. The Debtor told RMF that he had read the documents and they looked fine. Trial Tr. 2, p. 12; JE 21. The Debtor therefore cannot blame Mr. Berzow or RMF for the omission.

Finally, a debtor may not insulate himself by claiming that he failed to read his bankruptcy schedules prior to signing them. *United States Trustee v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005). Debtors have a duty to carefully review the information included in their schedules and statements and insure that the information is accurate and complete. *Id.* In light of the declaration included at the end of the Statement of Financial Affairs, even if a debtor blindly relies on such prompt from his counsel, such debtor nevertheless also swears in part, by virtue of this declaration, that the information contained in such documents is true and correct. *Dolata*, 306 B.R. at 151; *see also Tully*, 818 F.2d at 111 ("[A] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath"). The Bankruptcy Appellate Panel of the Eighth Circuit has stated,

> Declaring under penalty of perjury that the Statement of Affairs and Schedules have been read and are accurate, when the truth is that the Schedules and Statement of Affairs have not been read and are not accurate, is such a significantly detrimental act in terms of the bankruptcy process that we conclude that such declaration, when considered with the number and extent of the omissions and inaccuracies, was made with reckless disregard for the truth and with fraudulent intent. The bankruptcy system relies upon the truthfulness of those who seek its benefits. To allow debtors to ignore the seriousness of their oath, submit documents to the court which contain numerous material inaccuracies, and, when the inaccuracies are discovered, excuse their behavior because they claim they failed to read the documents before signing them under oath, would undermine the whole structure of the system.

*Bren*, 303 B.R. at 616.

The Debtor admittedly did not read his SOFA before submitting it to the Court and therefore may not insulate his reckless disregard for the truth. Regardless of whether RMF mistakenly excluded the transfers, the Debtor had an independent duty to read his documents before signing them. The Debtor cannot successfully assert an advice of counsel defense, and, therefore, the Plaintiffs have successfully established that the Debtor's omissions were made with fraudulent intent.

### d.     *Elements 5- The Statement Related Materially to the Bankruptcy Case*

Finally, the omissions and/or misstatements by a debtor must be material. "Any matter bearing on the discovery of estate property or the disposition of the debtor's property is material for purposes of § 727(a)(4)(A)." *Abramov*, 329 B.R. at 134. If the omission interferes with the ability to fully investigate potential preference or fraudulent conveyance actions, then the omission may be material. *Wright*, 364 B.R. at 74.

The omissions made by the Debtor in his SOFA relate to the disposition of potential estate property that the Debtor transferred prior to bankruptcy. Additionally, these transfers might have been susceptible to preference or fraudulent conveyance claims, as they were made

within the relevant time periods for those causes of action. *See* 11 U.S.C. §§ 547, 548. Therefore, the omissions are material.

Because the Plaintiffs have satisfied their burden to prove all five elements by a preponderance of the evidence, the Court will deny the Debtor's discharge pursuant to § 727(a)(4)(A).

## 2.    *1st Cause of Action- Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2)(A)*

Having determined that the Debtor's discharge is denied pursuant to § 727(a)(4)(A), the Court declines to rule on the Plaintiffs' § 727(a)(2)(A) claim.

## 3.    *Attorneys' Fees*

The Plaintiffs assert that they are entitled to attorneys' fees under the terms of their pre-petition Guaranties with the Debtor. However, the allowance by the bankruptcy court of post-petition legal fees generally is only relevant as part of the *claims allowance* process. *See Desiderio v. Parikh (In re Parikh)*, 508 B.R. 572, 600 (Bankr. E.D.N.Y. 2014). In this case, the Trustee has indicated that there will be no distribution to creditors, and therefore there is no point in allowing or disallowing claims. Having denied the discharge in this case, the Plaintiffs are free to pursue the Debtor outside of bankruptcy for any legal fees and expenses that they may be entitled to under the contractual agreement between the parties.

## CONCLUSION

For the foregoing reasons, the Court will grant the relief sought by the Plaintiffs and deny the Debtor's discharge pursuant to § 727(a)(4)(A). The Court declines to rule on the Plaintiffs'

claim under § 727(a)(2)(A). Further, this Court denies the Plaintiffs' request for attorneys' fees.

A Judgment consistent with this Decision will issue forthwith.

Dated: Central Islip, New York
       June 20, 2014

                                         ***/s/ Robert E. Grossman***_____
                                         Hon. Robert E. Grossman, U.S.B.J.